**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

CONNEMARA TRADING, LLC and
WARRNAMBOOL INVESTMENT
GROUP,

        Petitioners,

v.                                                                Civil No. 1:08-mc-00003-SPM-AK

UNITED STATES OF AMERICA,
Department of the Treasury–
Internal Revenue Service

        Respondent.
_____/

**ORDER DENYING THE MOTION TO QUASH**

THIS CAUSE comes before the Court upon Petitioners' "Petition to Quash Summonses" (doc. 1), the Respondent's "Motion to Deny Petition to Quash and for Enforcement of the ISR Summonses" (doc. 3), Petitioners' "Response to Motion to Deny and Enforce" (doc. 4), Respondent's reply memorandum (doc. 11), and finally, Petitioners' sur-reply (doc. 12).

Petitioners object to the summonses issued by Respondent on several grounds. First, because Petitioners believe that the investigation is being conducted for the illegitimate purpose of harassing Petitioners and their investors into abandoning their lawful positions and therefore depriving them of their lawful

tax deductions.  Second, Petitioners claim that the documents requested by the Respondent's summonses are not relevant to the agency's purpose of examining Petitioners' tax liabilities.  Third, Petitioners also claim that Respondent already has in their possession "much, if not all of the information sought."  Fourth, Petitioners allege that the administrative steps that Respondent is required to follow have not been followed.  Lastly, Petitioners allege (without argument) that the summonses and Respondent's compliance procedures are unconstitutional on their face and as applied because they constitute a violation of due process, the separation of powers, freedom of speech and the right to petition the government for redress.  The Court disagrees with all of the grounds stated by Petitioners and for the following reasons Petitioners' motion to quash will be denied.

**I.     BACKGROUND**

On January 24, 2008, James and Linda Hart were both served with a summons from Respondent IRS.  The Harts own 99 percent of Petitioner Warrnambool.  Warrnambool owns 98 percent of Petitioner Connemara Trading.  The summonses request data related to the Harts' tax liability or the collection of tax liability for the period from January 1, 2004 through December 31, 2004.  The summonses also requested the appearance of the Harts for examination on March 12, 2008.

The Harts, through Petitioners, operate a business of consumer receivable

management and collection.  In this business they partner with creditors for the servicing and collection of semi-performing and performing consumer receivables.  Petitioners are the first of their kind to engage in this type of business in Brazil.  The IRS believes that Petitioners engaged in "tax shelters" and "abusive transactions."

Specifically, the IRS is examining transactions that generated losses claimed from writing down the value of "distressed debt," which consisted of consumer accounts receivable from one or more Brazilian retail stores.  The IRS examinations involving Distressed Asset and Debt ("DAD") tax shelters are taking place on two tracks.  The first track is an investigation of the correctness of returns filed by businesses that passed on business losses to American taxpayers.  The second track is an investigation of the correctness of returns filed by those American taxpayers.  Petitioners fall within the first track. United States taxpayer-participants in these transactions, through their interest in entities like the Petitioners, have claimed losses on their federal income tax returns related to those transactions.  These losses are approximately $39,000,000 in 2003, $119,000,000 in 2004, and $65,285,000 in 2005. The Harts were involved in one of the DAD tax shelter transactions.  Specifically, the IRS believes that the Harts used the losses flowing through from Petitioners to reduce the Harts' taxable income.

Pursuant to this audit of Petitioners, the IRS made multiple Information

Document Requests ("IDRs").  In 2007, when the IRS concluded that Petitioners did not provide all of the requested information previously described in the IDRs, they began making Formal Document Requests ("FDRs").  Formal Document Requests are used by the IRS "after the normal request procedures have failed to produce the requested documentation."  26 U.S.C. §982(c)(1). Petitioners claim that the issuance of multiple IDRs and FDRs were calculated to harass and intimidate Petitioners.  Accordingly, Petitioners have brought this claim to quash the IRS summonses.

**II   GOVERNING LAW**

"[T]he Secretary of the Treasury, or the IRS as his designee, may 'examine any books, papers, records, or other data which may be relevant or material to . . .' ascertaining the correctness of any return and may issue summonses to those in 'possession, custody, or care' thereof to appear and produce them to the IRS." Anderson v. United States, 236 Fed. Appx. 491, 495 (11th Cir. 2007) (quoting La Mura v. United States, 765 F.2d 974, 978-79 (11th Cir. 1985) and 26 U.S.C. § 7602).  Additionally, the IRS' "power to investigate . . . has been described as 'broad' and 'expansive.'" Anderson, 236 Fed. Appx. at 495 (citations omitted).  To obtain enforcement of a summons and demonstrate good faith in issuing it, "the IRS must demonstrate (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS'[s]

4

possession and, (4) that it has taken the administrative steps necessary to the issuance of a summons."  Anderson, 236 Fed. Appx. at 495 (citations omitted); United States v. Stuart, 489 U.S. 353, 359 (1989).  "Once the government satisfies these requirements, the burden then shifts to the party contesting the summons to 'disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process.'" Id. (quoting La Mura, 765 F.2d at 979-80.

## III.  ANALYSIS

### A.  Legitimate Purpose

The IRS "has a statutory duty to inquire after persons who may be liable for the payment of taxes."  United States v. McAnlis, 721 F.2d 334, 336 (11th Cir. 1983).  Here, Petitioners allege that the purpose of the summonses was to harass and intimidate them as punishment for their refusal to settle the issues with the IRS.  Petitioners also allege that Respondent is using the issuance of summonses to extend the relevant statute of limitations in which Respondent can examine Petitioners' tax returns.

The "IRS can issue a summons to investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" United States v. Powell, 379 U.S. 48, 57 (1964).  Furthermore, the "function of the district court . . . in an enforcement proceeding is not to test the final merits of the claimed tax deduction, but to assess within the limits of Powell whether the

IRS issued its summons for a legitimate tax determination purpose." United States v. White, 853 F.2d 107, 116 (2d Cir. 1988).  Accordingly, this Court finds that Petitioners have failed to offer sufficient evidence disproving that the summonses were issued for a legitimate purpose.

   *B.   Relevance*

"Information is relevant if it 'might throw light upon the correctness of the taxpayer's return.'"  Anderson, 236 Fed. Appx. at 495 (quoting La Mura, 765 F.2d at 981).  "The government's burden of showing relevance is slight."  Anderson, 236 Fed. Appx. at 495 (citing La Mura, 765 F.2d at 981).  "'The government must establish that it has a realistic expectation rather than an idle hope that something might be discovered.'"  Anderson, 236 Fed. Appx. at 495 (quoting La Mura, 765 F.2d at 981).

Here, Petitioners claim that the documents requested through the summonses do not help Respondent examine Petitioners' tax liabilities because Respondent's request does not include information about central offshore transactions that are essential to Petitioners' business.  Petitioners also allege that the information being requested through the summonses is overly broad because they request "all documents related to" general business activities of Petitioners.  Lastly, Petitioners allege that because Respondent was able to make determinations about the allowance of deductions and penalties for similarly-situated individuals without the benefit of a summons, then Respondent

should be able to do the same thing in this case.

According to the declaration of IRS agent Larry Weinger, the documents requested by Respondent relate to legal or tax advice, anticipated tax benefits, payment of funds related to Petitioners, promissory notes, contributions to Petitioners, and agreements with Petitioners.  This requested information is information that the Harts should have access to and is evidence that can support the information contained in their tax returns. The summonses clearly relate to the transactions that lead to the losses represented on the Harts' tax return.  Therefore, the IRS has sufficiently demonstrated that there is a realistic expectation that they will find information to shore up or contradict the Harts' tax returns. The information requested is indeed relevant.

   *C.*  *Possession*

Petitioners allege that they have already provided Respondent with "nearly two million pages worth of documents, responsive records, DVDs and CD-ROMs" that are response to Respondent's request.  Petitioners make this argument by comparing their situation with similarly-situated petitioners who have already submitted documents as exhibits in their respective "summons-quashing proceedings."  Petitioners argue that Respondent has failed to exclude those documents from its requests to Petitioners.

However, Petitioners have proffered no evidence that Respondent already has the specific documents requested by the subject summonses.  Agent

Weinger states, under the penalty of perjury that the IRS "is not in possession of the summoned information." Furthermore, the summonses specifically state that if the documents were previously provided to the IRS, that Petitioners should identify what documents were provided, when they were provided, who they were provided to, and the request to which the documents relate. Respondent's request for this level of specificity does not indicate a desire to harass Petitioners. Nor does it indicate that the IRS already has these requested documents in their possession.

        D.     *Administrative Process*

Petitioners allege that the statutory requirement that Respondent send notification to Petitioners' designated representative was not satisfied. Petitioners claim that because they are represented by counsel, that Respondent's failure to serve counsel with the summons that had been served on Petitioners, is in violation of IRS administrative procedure. IRS regulations, Treasury Regulations and federal statute all require that Respondent may contact third parties only after providing reasonable notice. Therefore, Petitioners allege, failure of Respondent to provide this notice to Petitioners' counsel is an "egregious violation" of Respondent's administrative procedure.

Petitioners are correct that there is a statutory requirement to provide such notice to third parties. See 26 U.S.C. §7609. However, Section 601.506(3) of the Treasury Regulations also states that "[f]ailure to give notice or other written

8

communication to the recognized representative of a taxpayer will not affect the validity of any notice or other written communication delivered to a taxpayer." Accordingly, this Court finds that Respondent's failure to provide notice to Petitioners' counsel of record does not constitute a violation of the IRS' administrative procedure. Nor does it invalidate the summonses issued to Petitioners.

### E.     Abuse of Process

Once the IRS establishes a prima facie case for enforcement, the burden shifts to the taxpayer to show that enforcement would be an abuse of the court's process. Powell, 379 U.S. at 58. "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." Id., at 58; Stuart, 489 U.S. at 360. In this case, the IRS has plainly satisfied the good faith requirements and have demonstrated a prima facie case for enforcement of their summonses.

The declaration of IRS Agent Weinger states under the penalty of perjury that the information sought was not within their possession and that it might be relevant to the computation of Petitioners' tax liabilities. In addition, the IRS issued its summonses in conformity with applicable statutes and duly informed Petitioners of their issuance. In their petition to quash, Petitioners nowhere

allege that the IRS was attempting to use this Court's process for some improper purpose, such as harassment.  Nor does it appear that they later sought to prove abuse of process. Therefore, Respondent is indeed entitled to an enforcement order.

## IV.     CONCLUSION

The precedent established by Supreme Court cases points to a broad interpretation of the summons authority to permit the effective performance of IRS's tax collecting responsibilities.  United States v. Gottlieb, 712 F.2d 1363, 1370 (11th Cir. 1983) (citing United States v. Euge, 444 U.S. 707, 711 (1980); United States v. Bisceglia, 420 U.S. 141 (1975); Donaldson v. United States, 400 U.S. 517, 536 (1971); United States v. Powell, 379 U.S. 48 (1964)).  Respondent has demonstrated that the investigation of Petitioners is being conducted pursuant to a legitimate purpose, the inquiry is relevant to that purpose, the information sought is not already within the possession of the IRS and the required administrative steps have been followed.  Therefore, the IRS has met its burden under Powell.  Petitioner has failed to refute the government's prima facie case or shown that the enforcement of the subject summonses would constitute an abuse of the court's process.

Accordingly, it is hereby ORDERED AND ADJUDGED as follows:

1.      Petitioners' Petition to Quash Summonses (doc. 1) is ***denied***.

2.      Respondent's Motion to Deny Petition to Quash and for

Enforcement of the IRS Summonses (doc 3) is hereby ***granted***.

3. The Clerk is directed to CLOSE this case.

DONE AND ORDERED this tenth day of October, 2008.

*s/ Stephan P. Mickle*

Stephan P. Mickle
United States District Judge